Good morning and may it please the court, Seagal Chada on behalf of Appellant Vanness et al. Good morning, your honors. Good morning. This case is about a First Amendment facial challenge on a recently passed law, 2023. It is SB 406, otherwise known as currently NRS 293-705. We are here today because the district court had found that plaintiffs did not have standing to challenge the law, whether it was a facial challenge. Did your clients participate as observers during the 2024 election? No, your honor, they did not. So what's your theory of standing? Well, there's two actual theories of standing, your honor. Whether we anticipate the standing coming from a pre-enforcement challenge under, as a criminal law that was passed because 293 actually has that criminal portion of it, which makes violation of the statute, violation of it with an offense punishable up to a Class E felony. But wouldn't you have to show a credible threat of prosecution? Correct, your honor. So if we look at it from a pre-enforcement challenge under Tingley, one of the things that the court has found that when we rely on prosecutorial discretion, whether to establish standing, standing is automatically impugned because a criminal act that threatens the First Amendment cannot be saved by any type of standing issue. Does that make sense? No, not really. Because I think our cases say that you have to show that there is a credible threat of prosecution in order to say that the prosecution is going to affect the plaintiffs. Otherwise, you're just speculating about whether or not they would be prosecuted. Sure. Now, I'd like to refer the court to Cal Pro-Life Council v. Getman, which specifically stated that when it comes to standing and we challenge a law that threatens the First Amendment, all that's required is that appellants intended to speak in a way that falls within the statute's reach, meaning if they intended to speak in a way that could end up with them being prosecuted with a Class E felony, that that is sufficient to establish the standing. I want to take you back to the sort of, I know you're answering Judge Rollinson's question with respect to the credible threat, but I think first you need to establish that there is in fact some sort of infringement on your client's First Amendment rights. And you know, as I read SB 406, it specifically and expressly excludes poll observation. So perhaps you can start at step one and explain how we even get to a constitutional interest that's being infringed by the law. As far as the particular exclusion? Yes, you're arguing as you're sort of just conclusively stating in your argument, and I understand that you're responding to the question about the credible threat, but we first have to be able to know that there is a First Amendment issue here and the statute that you're challenging in a facial challenge excludes the very conduct that your clients claim that they're going to be participating in. Actually, respectfully, Your Honor, it does not exclude poll watching, poll workers. In fact, the police have made very in their brief that there is no one that is subject to an exemption. One of the things that we brought up. I'm reading the statute here and it says this section does not limit observing the conduct of voting at a polling place pursuant to NRS 293-274. So that is what poll observation is. So how are you telling me that the statute does not exclude or specifically not apply to the very conduct that your clients? Well, the statute specifically does not exclude acts that we have alleged in the complaint, which would include also poll workers and in the context that a poll worker might engage in an activity, whether it's a poll observer or poll worker might engage in an activity that is actually violent of their First Amendment right based on that subjective idea of what exactly are we dealing with when we are dealing with intimidation, harassment, undue influence and so on. Maybe I'm not sure I totally understood that, maybe to come at it from another angle, could you? The complaint is, on my reading, a little bit vague about exactly what the conduct is that you want to engage in at polling places. So can you sort of spell out a little like what your proposed course of conduct would be that you fear might get you in trouble under the statute? Well, I think the analysis that needs to be made is because the statute itself is vague, what the conduct is, is the the appellants in this case didn't participate in the 2024 poll observing. But if you win or if the statute disappeared, what is it that you want to do? Or what is it that your clients did not do that they would want it to have done? Well, at the outset, they did not engage in the poll and poll observing in the 2024 election. So that's not prohibited by the statute, though. Agreed. Agreed. But what is prohibited by the statute is any act that would intimidate, harass, undue influence. So your clients want to intimidate? They want to harass? No, Your Honor. No, Your Honor. They do not want to intimidate and harass. But what the problem was, because there is no definition on what intimidation is, what is harassment, what is undue influence, the statute itself is so vague as to that definition that appellants were fearful that any type of act taken subjectively may have been viewed as intimidating, harassing. Can you give us some examples of the kinds of acts that your clients wanted to engage in that they feared might be deemed intimidation? Sure. So if, for example, a poll watcher, and we have this delineated in the complaint, there's things called rovers that work at poll locations. If, for example, a rover gets into a dispute with one of the other elections workers, and the rover uses a certain tone with that election worker, and that election worker might take that as, oh, well, you're trying to interfere with my ability. Now, when we deal with the issue of taking it from a criminal context, okay, one of the things that we mention in the briefs is because the standard is so subjective at what would be interfering or intimidating, that is a type of example that we had made in the complaint and in the briefing. So, and I could give you another example. And what's your, I mean, this maybe goes back to Judge Rawlinson's first question. What, do you have any reason to think that the people responsible for prosecution would deem that to be a violation and would then bring a prosecution? Well, and that brings us back to what the courts have stated in U.S. v. Fisher, where basically... I think the question, I'd really like you to answer the question. I think it's been asked now several times by several members of this panel, which is, don't cite to a case. Tell us factually what you are alleging constitutes the basis of what you believe gives rise to the possibility that this law will be enforced the way that you claim that it is going to be enforced against your claim. So, what specific things... And I'm looking in your tweet that's been made by the Nevada Attorney General, which, of course, predated the enactment of this law. So, to me, that doesn't really fit. What else can you point to that indicates that you believe there is going to be a credible threat of enforcement? Not a law, but facts. Okay. Well, as far as, just so I'm understanding the question correctly, as far as what kind of threats would be made as to the specific acts that these appellants would engage in? Your argument is that there is going to be an infringement on the constitutional rights of your clients. Correct. And we have to be able to identify whether or not there is actually any evidence to support the notion that this law will be enforced in the way that you are alleging that it is. What are those facts? Okay. Well, we know that the law was actually passed and the decision was made before the 2024 election. That being said, what we have to realize is that while there has been no threat of prosecution as to the appellants, because the appellants themselves did not participate in the 2024 election for fear of this prosecution, what we look at is we do look at the context... Have there been any threats of prosecution against Rovers, for example? Against Rovers, against other employees, supervisors, all the possibility... No, no, not possibility. Have there been threats of enforcement against poll observers, poll workers, Rovers, any of those? During the 2024 election? No, not that I know of. Not that I know of. That being said, I think it is a credible statement that a 2020 tweet that had taken place calling poll watchers election interference, engaging in election interference, and alleging that necessarily poll watchers were going to be used as a... This was some kind of a dog whistle to actually interfere with an election actually does make sense to a credible threat on a law that was already on the books in 2020, which would have been the law that is the harassment of the public official and so on and so forth. Counsel, you sued the secretary of state and the governor. Do either of those officials have the authority to prosecute under the statute? Both of those have the authority to commence the investigation and the prosecution. The governor is the chief... How? How would the governor commence a prosecution? Well, I think that the governor is calling on the attorney general's office... They could make a referral potentially. Why don't you sue the attorney general? I don't have an answer to that. But neither... Is your answer to Judge Rawlinson's question that neither the governor nor the secretary of state can on his or her own bring a criminal prosecution? I think that the secretary of state actually can bring a prosecution because he is the, I believe, the chief law enforcement officer on elections. I think the secretary of state is the chief elections officer for the state. Yes, I'm sorry. But not law enforcement. No, on the elections. And sort of the flip side, if, say, a county prosecutor were to bring a prosecution, would either the governor or the secretary of state have authority to order the county prosecutor not to proceed with that prosecution? I think that under the governor's powers, he does have the ability to preclude a county prosecutor from prosecuting... Would say that. It is in my brief. I believe it is the court's indulgence... DA's office for 17 and a half years, and I never knew the governor to tell the DA when he or she could, he could prosecute. It is in my brief, Your Honor. Okay, let's have that statute. I'm sorry. Oh, you can't, you don't recall it right now? I'm not off the top of my head, Your Honor. You don't have to go get it. It is in my briefing, though. Actually, I apologize. The court's indulgence. The governor, Article 5, Section 13 of the Nevada Constitution includes pardons, reprieves, and commutations of sentences, remissions of fines and forfeiture. The governor shall have the power to suspend the collection of fines, forfeitures, and reprieves for a period not exceeding from the time of conviction for all offenses in cases of, except in cases of impeachment. So I do find that Article 5... On pardon authority, but it can't tell the DA. The governor cannot tell the DA to cease a prosecution or to commit a prosecution. Okay. And if that's right, doesn't it follow that, you know, even if you had an injury, in fact, that injury was not caused by these defendants and could not be redressed by relief against these defendants because the prosecution would be brought by the AG or the county prosecutors or some other people, right? There could be that argument that is made that the governor cannot bring prosecutions. But I mean, if that argument is made and is accepted, doesn't that mean that you lack standing here because you can't establish causation and redressability? Possibly. Did you want to save some time for rebuttal? Yes, Your Honor. I would like to. I'm down to four minutes. Thank you. Thank you. We're here for the state. Good morning, Your Honors, and may it please the court. I'm Lennis St. Jules on behalf of the Nevada Secretary of State. With me here today is Jessica Whalen on behalf of the governor. I'll be arguing on behalf of both defendants. This case concerns reasonable protections designed to stem the tide of incredible turnover in elections officials across the state due to harassment and death threats. SB 406 was enacted to protect elections officials who are performing their elections duties. This case was properly dismissed, and we ask that this court affirm. Plaintiff's complaint fails for a number of independently sufficient reasons. I'll start first by discussing why plaintiff's claims are not justiciable, and I'll also discuss the 11th Amendment issue. So turning to justiciability, as the court is aware, conduct that is arguably prescribed by statute must be alleged. And here we simply just don't have that. Let me ask you this. In the First Amendment context, plaintiffs don't need to show a specific threat of enforcement. If their alleged speech is arguably prescribed by the statute, that's enough. So if there's a circumstance in which a poll observer saw something that they didn't agree with or they thought was wrong, and they, after sharing their disagreement or telling the elections administrator or the person administering the election that they disagreed or they thought it was wrong, made a threat to file a lawsuit, would that be enough to come under the ambit of this particular statute in terms of the chilling of speech? I don't believe so. I think, you know, there's laws on intimidation, and I don't think just filing a lawsuit is enough to give rise to a criminal prosecution. Because there's no definition of the term in this particular statute, how can we know that threatening a lawsuit, for example, after sharing some disagreement about the administration of election isn't enough? Intimidation has been defined in other contexts by this court and other courts, and I don't think I've ever seen a case suggesting that that could be extended to bringing a lawsuit. I think the settled legal meeting wouldn't include that. So tell us why, even if we were to find that there's arguably some sort of prescribed conduct under the statute, we still can find in your favor with respect to the standing issue? Well, I think traceability is also an issue. They've sued the wrong defendants and the governor and the secretary. There is nothing in the record that suggests they have criminal prosecutorial authority. So I think... It's not really a record question. It's just a question of Nevada law. So is it your representation that under Nevada law, neither the governor nor the secretary of state can bring a criminal prosecution or direct the bringing of a criminal prosecution? I haven't found any statute that suggests they have that authority. And does either of them have authority? If some other official who does have authority were to bring a prosecution, would either the governor or the secretary of state have authority to tell them to stop? Again, I've seen no statute suggesting as much. So I think on its face, nothing that in the complaint alleges conduct that could possibly be reached by SB 406. And we're dealing with what's alleged in the complaint. And I don't see any conduct other than working as a poll worker or as a poll observer. And those aren't covered by SB 406 without something more. So I think for those reasons, standing fails. I'll turn to the 11th Amendment. Nevada has not waived its 11th Amendment immunity. So plaintiffs would have to establish that the state officer defendants have some connection with the enforcement of the act. And that must be fairly direct. For that reason, a governor who only has a general duty to enforce the state's law is entitled to 11th Amendment immunity as held in association with the state. While plaintiffs refer to the governor's post-conviction clemency powers, that does not give him a connection to the front end enforcement of SB 406. And for essentially the same reasons, the secretary also does not have a sufficiently direct connection to the enforcement of SB 406. He is Nevada's chief election officer, but he only has a general duty to enforce the election's laws. There's nothing more that connects him to the enforcement. For instance, I'm not aware of anything that gives him policing or investigatory authority, or the power to arrest, or the power to institute administrative proceedings, or the power to refer for criminal prosecution, or the power to assist in a prosecution, or the power to criminally enforce the statute. Plaintiffs also raise other grounds in their reply, unrelated to the enforcement of SB 406 to try to salvage their claims. They point to the secretary's ability to enact regulations. He hasn't enacted any regulations relating to SB 406, and in any event, enacting regulations in Nevada generally requires legislative approval. Plaintiffs also argue that the governor signed SB 406 into law, but all of these acts touch on legislative functions. Not on questions of enforcement. And as the Supreme Court has held, officials outside of the legislative branch are entitled to legislative immunity when they perform legislative functions. This is Bogan v. Scott-Harris, 523 U.S. 44. So 11th Amendment bars this action and for substantially the same reasons. Traceability just doesn't exist here either. I'd be happy to go into the merits if your honors have any questions. It appears not. Well, thank you, Your Honor. Rebuttal. Thank you, Your Honors. I'd like to respond to one of the questions that was posed. NRS 293-124 actually does state that the Secretary of State shall serve as Chief Executive Officer. As Chief Officer, the Secretary of State is responsible for execution and enforcement of Title 24 NRS and all provisions of state and federal law relating to elections. So he does have the power to enforce these laws, whether by utilizing the Attorney General's office or the 17 counties district attorneys. Another one of the issues that I did want to bring up that I feel needs to be clarified is that when we talk about the actual criminal penalties that are involved, one of the things that we need to address is that the physical act of committing a crime under SB 406 threatens the First Amendment. And that is at the outset because of the undefined scope of its prohibitions. And again, when we talk about the vagueness of what it means to actually be intimidating or undo influence or harassment. And one of the things that I believe when we look at Fisher v. U.S., that Justice Roberts had clearly indicated that a phrase that can have more focused terms and a more focused meaning to it should be used rather than vague terms such as that do not put our appellants, first of all, or any individual on notice of what is the crime that they are potentially going to be charged with and whether that has any further ramifications on that. And our request is that the court reverse and remand the case for further adjudication. Thank you. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned. All right. Thank you. This court for this session has adjourned.
judges: RAWLINSON, MILLER, DESAI